IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANDRA VALDEZ HERNANDEZ,
*as Parent of and Next Friend to*
J.V. A MINOR CHILD

    Plaintiff,

vs.

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS

    Defendant.

No. 13-CV-01010-MV-LAM

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support [Doc. 49], APS' [Albuquerque Public Schools] Motion for Summary Judgment and Memorandum Brief in Support Thereof [Doc. 51], and Defendant's two Motions *in Limine* [Docs. 50, 52]. The Court, having considered the Motions, briefs, attached materials, relevant law, and being otherwise fully-informed, finds that Defendant's Motion for Summary Judgment is well-taken and therefore will be **GRANTED**, that Plaintiff's Motion for Partial Summary Judgment is not well-taken and therefore will be **DENIED**, and that, consequently, Defendant's Motions *in Limine* will be dismissed as **MOOT.**

### BACKGROUND

Despite the vociferously contested details of this case, the facts material to its resolution are easily described. Plaintiff J.V., a minor child, "has been medically diagnosed with Down Syndrome" and "has been receiving special education services through APS since he was three years old." APS Statement of Undisputed Material Facts (ASUMF) ¶ 1. On August 23, 2011,

1

when he as thirteen years old, J.V. was involved in a classroom altercation involving APS employees. *Id.* ¶¶ 2-3. *See also* J.V. Statement of Undisputed Facts ("JVSUF") ¶ 6. The precise details of the encounter are fervently debated in the briefs, but the broad outline suffices to resolve this matter: APS employees "physically managed" J.V. pursuant to a policy statement issued by the district and best practices manual promulgated by the APS Special Education Department. *See id* ¶¶ 1-3; ASUMF ¶¶ 15-18. This level of generality suffices because it is the "adoption of policy [sic] and related practices" that forms the gravamen of Plaintiff's Complaint, as the "APS employees' use of physical restraint against J.V." is alleged to have been "applied in furtherance of APS's specific policy to use physical restraint against students with disabilities, without consideration to the effect of its applied policy and practice." *See* Doc. 1-1 ¶¶ 74-77.

On the facts before the Court, it is apparent that there are two documents that describe the parameters of physical interventions with APS students. The first is a memorandum entitled "Staff Conduct with Students – March 2007 Revision," which outlines the circumstances in which the "reasonable restraint" of students is justified. *Id.* ¶¶ 15-16. *See also* Doc. 51-1 at 5-9. The memorandum lists four instances in which physical management of students is appropriate, including to "quell a disturbance threatening serious, probable and imminent bodily harm" and to "obtain possession of weapons or other dangerous objects which are within the control of a student who poses a serious, probable, and imminent threat of bodily harm." Doc. 51-1 at 5. It also notes that "[i]n the case of students receiving special education services, any restraint used beyond the four specific situations listed above shall be identified on the student's Individual Education Program (IEP) as part of the student's behavior plan." *Id.* Thus, on its face, this policy applies to all students, although it facially provides for additional circumstances in which disabled students may be restrained.

The second operative document, "Best Practice [sic] Use of Physical Management for Students with Disabilities," supplements the general policy described in the first document regarding the reasonable restraint of students with additional protocols, including, for example, urging the creation and maintenance of records documenting physical interventions with disabled students.  *Id.* at 8.  APS argues that this document is not a "policy" because it was never formally adopted by the Board of Education, but even if the document is considered an official declaration by the Defendant, the Court's analysis remains unchanged.  *See* Doc. 56 at 2.  That is, while Plaintiff would have the Court assess the Best Practice document in a vacuum, given the existence of an official Board policy that addresses identical subject matter and the self-limiting description of the "best practices statement" as "provid[ing] guidelines for the use of physical management for students with disabilities," the Court is compelled to view the two documents as parts of a cohesive whole.  Doc. 51-1 at 5-9.  The Court also adds that the Best Practice document exhorts that "[p]hysical management is <u>always</u> a last resort, used only after <u>all other</u> less restrictive interventions have been exhausted or ruled out due to significant safety concerns."  *Id.* (emphasis original).

On August 22, 2013, almost two years after the incident, Plaintiff filed suit against Defendant APS in the Second Judicial District Court, County of Bernalillo, New Mexico, alleging "violations of Section 504 of the Rehabilitation Act of 1973 ('Section 504'), Title II of the Americans with Disabilities Act ('Title II of ADA'), and the New Mexico Tort Claims Act" ("NMTCA").  Doc. 1 at 1.  Defendant timely removed the action to this Court, relying on federal question jurisdiction and the Court's authority to exercise supplemental jurisdiction over pendant state law claims.  *See generally id.*  Plaintiff did not oppose removal.  The parties now move for summary judgment.

**DISCUSSION**

**I.   Cross Motions for Summary Judgment**

Federal Rule of Civil Procedure 56 directs the Court to enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's analysis is no less stringent where, as here, the parties file cross-motions for summary judgment. *See Hospice of New Mexico, LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1286 (D.N.M. 2010) (explaining that "cross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist. They require no less careful scrutiny than an individual motion.") (internal quotation marks omitted). Even so, when faced with cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted). Further, "[t]o the extent the cross-motions overlap," the Court is permitted to "address the [parties'] legal arguments together." *Berges v. Std. Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

In all other respects, cross-motions for summary judgment are evaluated according to the well-worn standard for individual Rule 56 motions. Hence, in evaluating the motions before it, the Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014). In judging whether a *genuine* issue of material fact exists, the Court asks "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and "if under the substantive law [the fact] is essential to the proper disposition of the claim." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (internal quotation

marks omitted). Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). The Court will address itself first to the dispute regarding the federal claims.

## II. Section 504 of the Rehabilitation Act and Title II of the ADA

Section 504 of the Rehabilitation Act and Title II of the ADA both prohibit discrimination against individuals with disabilities. *See* 29 U.S.C. § 794(a) ("[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."); 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

Given their shared remedial purpose and the propinquity of their phrasing, "[a]nalysis of a claim under Title II of the ADA is identical to an analysis under the Rehabilitation Act." *Kimble v. Douglas Cty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1182 (D. Colo. 2013). *See also Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) ("To the extent feasible, we look to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA.") (internal quotation marks omitted); *Swenson v. Lincoln Cty. Sch. Dist. No. 2*, 260 F. Supp. 2d. 1136, 1145 (D. Wyo. 2003) ("The elements of a cause of action under Title II of the ADA and section 504 of the Rehabilitation Act are the same because Congress has directed courts to construe the ADA as giving at least the same amount of protection as the Rehabilitation Act."). Consequently, the Court will evaluate these two claims together.

"To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007). Some articulations of Section 504 claims add to this list of elements the requirement that the alleged discriminator in question be a beneficiary of federal funds, though no such issue emerges in the case at bar. *See, e.g.*, *Kimble*, 925 F. Supp. 2d at 1182.

Here, it is conceded by both parties that J.V. is a qualified individual with a disability and that APS is a public entity, such that the focus of the briefing centers nearly entirely on the question of whether APS has discriminated against Plaintiff. *See, e.g.*, Doc. 57 at 15-16. Even so, J.V.'s position in this regard is muddled. In his Motion, he argues that the Best Practice document discriminates against him and other students with disabilities because it "manifests its intention to plan for and rely on physical restraints (with their attendant risk of injury) only with respect to students with disabilities." Doc. 49 at 7. In his Response to Defendant's Motion, J.V. clarifies this contention, explaining that "APS's promulgation and implementation of [sic] physical restraint 'Best Practice' which applied only to students with disabilities discriminates and was a cause of the physical restraint against J.V." Doc. 57 at 16. Therefore, the Court understands Plaintiff to allege that APS discriminated against J.V. by endorsing the Best Practice document and that one purported consequence of this policy was the incident on August 23, 2011, in which APS employees restrained Plaintiff. *Cf.* Doc. 57 at 16 (Plaintiff characterizing the dispute as "whether APS has discriminated against J.V. on the basis of disability through its adoption and implementation of the physical restraint 'Best Practice'").

"Three theories of discrimination are available to a plaintiff alleging a violation of Title II of the ADA:  (1) intentional discrimination; (2) discriminatory impact; and (3) a refusal to make a reasonable modification." *Swenson*, 260 F. Supp. 2d. at 1144.  Plaintiff claims that APS has intentionally discriminated against J.V. because the Best Practice memorandum constitutes a facially discriminatory practice insofar as it distinguishes between disabled and non-disabled students.  *See* Doc. 49 at 4.  The Court is unconvinced.  As described above, when the Best Practice memorandum and underlying physical restraint policy are read together, the two documents make clear that *any* student at the school may be restrained in four circumstances, while disabled students may *also* be restrained in contexts specified by their IEPs, and that certain additional procedures must be followed if such students are physically managed.  *See generally* Doc. 51-1.  The underlying policy, "Staff Conduct with Students," generically applies to all students and only refers to specific procedures for "students receiving special education services" after discussing the four instances in which *any* student may be restrained.  *See* Doc. 51-1 at 5.  The Best Practice memo, in turn, describes only the "guidelines [that] should be followed if physical management is necessary," rather than substantively defining the circumstances in which restraint is warranted.  *Id.* at 8.  Logically, then, the parameters for when physical intervention is justified must be drawn from the background policy statement, "Staff Conduct with Students," which outlines four sets of circumstances for all students, and, in the case of students with disabilities, refers the reader to any additional circumstances "identified on the student's [IEP] as part of the student's behavior plan." *Id.* at 5.

Hence, the contention that APS "manifests its intention to plan for and rely on physical restraints" solely for students with disabilities is demonstrably false; APS policy expressly contemplates the restraint of *all* students, irrespective of disability.  *See id*. (not differentiating

7

between students with respect to four enumerated justifications for physical intervention). Viewed in aggregate, it is unclear how APS policy is the product of prohibited discrimination. Permitting additional physical interventions solely in circumstances described in a student's IEP does not rely on stereotypes about the disabled, but rather draws from an *individuated determination* about what is appropriate for *that* student.  To hold to the contrary would effectively imply that *any policy* incorporating exceptions predicated on IEPs is discriminatory because it facially differentiates between disabled and non-disabled students.

Plaintiff seeks to avoid this conclusion by ignoring the existence of the "Staff Conduct with Students" document, focusing entirely on the Best Practice memorandum, and then noting that "students without disabilities" are "nowhere addressed in the policy."  Doc. 49 at 6.  This clumsy sleight of hand is unavailing.  Reading both documents in concert quickly puts lie to the notion that that "APS manifests its intention to plan for and rely on physical restraints (with their attendant risk of injury) only with respect to students with disabilities."  *Id.* at 7.  To suggest otherwise is flatly disingenuous.

Moreover, even if distinction of this variety legally qualified as discrimination under Section 504 and Title II, APS would have met its burden in justifying its conduct.  The parties both agree that "there are two justifications available to Defendants even upon a showing of facial discrimination" borrowed from the housing discrimination context:  differentiation predicated on specific or particularized safety concerns and "discrimination" that genuinely benefits the disabled.  Doc. 69 at 8.  *See also* Doc. 56 at 10-11; *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503-1504 (10th Cir. 1995) ("Restrictions predicated on public safety cannot be based on blanket stereotypes about the handicapped, but must be tailored to particularized concerns about individual residents" and the law "should not be interpreted to preclude special

restrictions upon the disabled that are really beneficial to, rather than discriminatory against, the handicapped."). Each of these rationales finds ample grounding in the case at bar. Any additional restraint authorized by the Best Practice document is *necessarily* an individuated determination derived from a student's IEP. *See* Doc. 51-1 at 6. Moreover, as a comparison of the Best Practice document and background restraint policy makes patent, the Best Practice memorandum requires that APS employees be *more* conscientious in their physical interventions with disabled students by demanding that certain procedures be followed, including the documenting of all physical management of disabled students. *See id* at 9. Certainly, this policy benefits, rather than harms, disabled students. Thus, because the undisputed facts make patent that Defendant is entitled to judgment as a matter of law, the Court will grant summary judgment as to the federal discrimination claims.

### III. New Mexico Tort Claims Act

Plaintiff's sole remaining claim in this action arises under the New Mexico Tort Claims Act. The Court initially exercised supplemental jurisdiction over this claim because it emerged from the same nucleus of operative facts as the two federal question claims, but this justification is no longer operative. As the remaining cause of action in this case is a creature entirely of state law, the Court is permitted to remand the remainder of the action to state court. *See* 28 U.S.C. § 1367(c)(3). Here, the Court will accede to the Tenth Circuit's request that the district courts "should decline the exercise of jurisdiction by dismissing the case without prejudice" where all federal law claims are dismissed before trial. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). That is, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation marks omitted). The Court

perceives no circumstances in this case that counsel it to reject the ordinary rule in this circuit and exercise jurisdiction over an action now predicated entirely on state law; therefore, the Court will remand the NMTCA claim to state court.

## IV.     Motions *in Limine*

Given its disposition of the Motions for Summary Judgment, the Court will treat the Defendant's two Motions *in Limine* as moot.

## CONCLUSION

No material facts remain in dispute and Defendant is entitled to judgment as a matter of law with respect to Plaintiff's federal discrimination claims.  The remainder of the suit will be remanded to state court for further proceedings.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is well-taken and therefore will be **GRANTED**, that Plaintiff's Motion for Partial Summary Judgment is not well-taken and therefore will be **DENIED**, and that, consequently, Defendant's Motions *in Limine* will be dismissed as **MOOT.**

Dated this 30th day of June, 2015.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

**Gail S. Stewart**
**Laurel Marie Nesbitt**
Steven Granberg Attorney at Law PA
3800 Osuna Rd. NE
Suite 1
Albuquerque, NM 87109
*Attorneys for the Plaintiff*

**Samantha Adams**
**Mia L. Kern**
Modrall, Sperling, Roehl, Harris & Sick
P.O. Box 2168
Albuquerque, NM 87110
*Attorneys for the Defendant*